FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 16, 2017

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CASEY ALLEN GREER, | No. 2:16-cv-00023-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | ECF Nos. 15, 19 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No. 19).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The

party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

1   At step four, the Commissioner considers whether, in view of the claimant's

2   RFC, the claimant is capable of performing work that he or she has performed in

3   the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

4   capable of performing past relevant work, the Commissioner must find that the

5   claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

6   performing such work, the analysis proceeds to step five.

7   At step five, the Commissioner considers whether, in view of the claimant's

8   RFC, the claimant is capable of performing other work in the national economy.

9   20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner

10  must also consider vocational factors such as the claimant's age, education and

11  past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

12  adjusting to other work, the Commissioner must find that the claimant is not

13  disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

14  other work, analysis concludes with a finding that the claimant is disabled and is

15  therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

16  The claimant bears the burden of proof at steps one through four above.

17  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

18  step five, the burden shifts to the Commissioner to establish that (1) the claimant is

19  capable of performing other work; and (2) such work "exists in significant

20

1    numbers in the national economy."  20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*,

2    700 F.3d 386, 389 (9th Cir. 2012).

3    **ALJ'S FINDINGS**

4    Plaintiff applied for Title XVI supplemental security income benefits on

5    September 11, 2012.  Tr. 130-38.  He alleged a disability onset date of June 1,

6    2006.  Tr. 130.  The application was denied initially and upon reconsideration.

7    Tr. 86-89, 96-98.  Plaintiff appeared at a hearing before an Administrative Law

8    Judge (ALJ) on September 17, 2014.  Tr. 44-67.  On November 4, 2014, the ALJ

9    denied Plaintiff's claim.  Tr. 27-43.

10    At step one, the ALJ found that Plaintiff has not engaged in substantial

11    gainful activity since September 11, 2012.  Tr. 32.  At step two, the ALJ found

12    Plaintiff has the following severe impairments: old non-union left scaphoid with no

13    osteoarthritis or neurological findings, mild right knee osteochondroma,

14    dysthymia, pain disorder, and anxiety.  Tr. 32.  At step three, the ALJ found that

15    Plaintiff does not have an impairment or combination of impairments that meets or

16    medically equals a listed impairment.  Tr. 33.  The ALJ then concluded that

17    Plaintiff has the RFC to perform light work with the following non-exertional

18    limitations:

19    > The claimant can frequently climb ramps, stairs, ladders, ropes, and
     > scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He is
20   > able to understand, remember, and carry out simple, routine repetitive tasks
     > and instructions. The claimant is able to maintain attention/concentration on

simple, routine, repetitive tasks for 2 hour intervals between regularly
scheduled breaks. The claimant should have no interaction with the public.
He can have occasional, superficial, non-collaborative interaction with
coworkers. He should deal with things rather than people.

Tr. 34.  At step four, the ALJ found that Plaintiff is not capable of performing past

relevant work.  Tr. 39.  The ALJ determined at step five that there are jobs that

exist in significant numbers in the national economy that the Plaintiff can perform

given his age, education, work experience, and residual functional capacity such as

assembler, product inspector/checker, and hand packager.  Tr. 39-40.  On that

basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social

Security Act.  Tr. 40.

On December 8, 2015, the Appeals Council denied review, making the

Commissioner's decision final for purposes of judicial review.  *See* 42 U.S.C.

1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him supplemental security income benefits under Title XVI of the Social Security

Act.  ECF No. 15.  Plaintiff raises the following issues for this Court's review:

1.  Whether the ALJ properly discounted Plaintiff's symptom claims; and

2.  Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 15 at 11.

**DISCUSSION**

**A.  Adverse Credibility Finding**

First, Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting his symptom claims.  ECF No. 15 at 11-14.

An ALJ engages in a two-step analysis to determine whether a Plaintiff's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second,  "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002)("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were "not entirely credible." Tr. 35.

### 1. Objective Medical Evidence

First, the ALJ found that the objective medical evidence in Plaintiff's medical record does not support the degree of limitation he alleged. Tr. 35-36. An

1    ALJ may not discredit a claimant's pain testimony and deny benefits solely

2    because the degree of pain alleged is not supported by objective medical evidence.

3    *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947

4    F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir.

5    1989).  However, the medical evidence is a relevant factor in determining the

6    severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20

7    C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[1]  Minimal

8    objective evidence is a factor which may be relied upon in discrediting a claimant's

9    testimony, although it may not be the only factor.  *See Burch v. Barnhart*, 400 F.3d

10   676, 680 (9th Cir. 2005).

11       The ALJ set out, in detail, the medical evidence regarding Plaintiff's

12   physical impairments, *see* Tr. 35-38, and ultimately concluded that the medical

13   record did not support Plaintiff's allegedly debilitating impairments.  For example,

14   Plaintiff alleges that he has left wrist problems, however, as the ALJ noted, x-rays

_____

16   [1] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016.  The new

17   ruling also provides that the consistency of a claimant's statements with objective

18   medical evidence and other evidence is a factor in evaluating a claimant's

19   symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the

20   time of the ALJ's decision and therefore does not apply in this case.

1    of his hands were negative.  Tr. 35 (citing Tr. 222).  His left wrist showed a non-

2    union fracture, however, that had previously been noted in Plaintiff's medical

3    record and was not the presenting cause of Plaintiff's pain.  Tr. 35 (citing Tr. 222).

4    Upon examination, Plaintiff's left wrist had a normal range of motion.  Tr. 35

5    (citing Tr. 216).

6         Plaintiff also complained of limiting pain in his right knee, but as the ALJ

7    noted, objective medical evidence did not support this assertion.  Tr. 35 (citing Tr.

8    222).  X-rays of Plaintiff's knees were negative.  Tr. 35 (citing Tr. 222).  Plaintiff's

9    bloodwork to rule out rheumatoid arthritis and other arthritic conditions resulted in

10   a negative finding.  Tr. 35 (citing Tr. 222).  The ALJ observed that Plaintiff "was

11   advised that he had a benign incidental finding of osteochondroma in the right knee

12   and he presented at his next visit wearing knee brace which had not been present at

13   his prior visit."  Tr. 35 (citing Tr. 222).  Claimant's right knee had a full range of

14   motion upon examination.  Tr. 35 (citing Tr. 217).  Plaintiff's treating provider

15   opined that Plaintiff had "deconditioning of quadriceps muscles most likely

16   secondary to sedentary lifestyle."  Tr. 223.  He recommended that Plaintiff "begin

17   exercises at home to strengthen his quadriceps."  Tr. 223.

18        The record also supports the ALJ's finding that the objective evidence does

19   not support Plaintiff's claims that he suffered lower back pain.  X-rays of

20   Plaintiff's lumbar spine were negative.  Tr. 35 (citing Tr. 222).  Mr. Moss told

Plaintiff that he did "not have any objective findings to substantiate a diagnosis consistent with chronic disability." Tr. 36 (citing Tr. 254). He also recommended that Plaintiff get a second opinion. Tr. 36 (citing Tr. 254). Three months later, Plaintiff informed Mr. Moss that he sought a second opinion, and the provider reviewed Plaintiff's medical records and noted that he "had a very extensive workup and that no further testing was indicated or necessary." Tr. 36 (citing Tr. 258). The ALJ noted that "[f]ollowing this second opinion, the claimant's reports about his knee, wrist and back problems ceased, and there is no record of any further complaints of treatments for these conditions." Tr. 36 (*see* Tr. 258-306). During this time, Plaintiff was regularly seeing his treating provider, and made complaints about other issues, including relatively minor issues such as a persistent cough. Tr. 258-306, 290.

The results of Plaintiff's mental status examination were inconsistent with the degree of limitation Plaintiff alleged. As the ALJ noted, Plaintiff scored 28 out of 30 possible points, Tr. 36, where "a score of 24 is the cut off score to be classified in the impairment range." Tr. 238. Plaintiff was oriented during the examination. Tr. 36 (citing Tr. 238). He successfully counted backwards from 100 by sevens, wrote "world" forward and backward, wrote a sentence, obeyed a three step command, named the current and past presidents, and perform basic verbal skills. Tr. 36 (citing Tr. 238). Dr. Dalley posited that Plaintiff "appears to

exhibit average mental control, and demonstrates an average fund of general information." Tr. 238. He also posited that Plaintiff "has the ability to think abstractly." *Id.* Plaintiff's scores on trail-making tests, "used for visual-conceptual and visual-motor tracking" were "within the normal limits range." Tr. 36 (citing Tr. 238). Overall, the results of Plaintiff's mental status examination were normal, and do not support Plaintiff's assertion that his mental health conditions prevent him from working.

The ALJ further observed that there is not medical evidence in the record to support Plaintiff's alleged onset date. Tr. 35. Plaintiff alleged that his disability started on June 1, 2006. Tr. 130. However, there is not any evidence in the medical record to support disability onset. Plaintiff did not allege a precipitating event or medical procedure which resulted in disability. Tr. 35. In fact, the evidence in Plaintiff's medical record does not begin until October 2012, more than six years after the alleged onset date. Tr. 35. Plaintiff argues that the ALJ should have made a finding based on the appropriate onset date and awarded benefits from that date. ECF No. 15 at 12. However, the Plaintiff's response misinterprets the ALJ's argument. That is, the question is not *when* Plaintiff's disability onset, but *whether* he became disabled at all. The ALJ reasonably concluded that the lack of medical evidence during the several year period from the

alleged onset date, June 1, 2006 to October 2012 undermined his claim of disabling impairments.

Plaintiff alleges that the ALJ's reasoning regarding objective medical evidence is flawed because the ALJ failed to take into account certain objective evidence. ECF No. 15 at 12. Specifically, Plaintiff contends that the ALJ failed to consider Dr. Week's observations that Plaintiff's gait was stiff, he appeared to experience pain putting on his shoes, and that he had decreased range of motion. *Id.* However, the ALJ's assertion that the objective medical evidence does not support Plaintiff's alleged symptoms does not require a complete and total lack of objective evidence in the record. Instead, the ALJ found that the overall medical record does not support Plaintiff's symptom claims. Even if the medical evidence in this case may be interpreted more favorably to the Plaintiff, it is susceptible to more than one rational interpretation, and therefore the ALJ's conclusion must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### 2.  Minimal Treatment Sought

The ALJ found that the degree of limitation Plaintiff alleged was inconsistent with the minimal treatment sought. Tr. 36. The medical treatment a Plaintiff seeks to relieve his symptoms is a relevant factor in evaluating the intensity and persistence of symptoms. 20 C.F.R. §§416.929(c)(3)(iv), (v). "[I]n assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or

1 inadequately explained failure to seek treatment or to follow a prescribed course of

2 treatment.' " *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d

3 1035, 1039 (9th Cir. 2008)).  The ALJ observed that Plaintiff did not take any pain

4 medication despite his allegedly disabling pain.  Tr. 36.  The ALJ relied on

5 Plaintiff's testimony to find that throughout treatment, Plaintiff did not regularly

6 take pain medication for his joints or his back.  Tr. 36 (citing Tr. 196, 219).  He

7 reported to one provider that he has tried ibuprofen, his girlfriend's oxycodone,

8 and Tylenol for his joint pain when the pain gets bad.  Tr. 36 (citing Tr. 219).  But,

9 he reported that the ibuprofen and oxycodone were only minimally effective, and

10 the Tylenol offered no relief.  *Id.*

11      Plaintiff argues that he was prescribed Naproxen and Naprosyn to treat pain,

12 which he reasons undercuts the ALJ's argument.  ECF No. 15 at 12-13 (citing Tr.

13 220-21).  Both Naproxen and Naprosyn are nonsteroidal anti-inflammatory drugs

14 (NSAIDs) similar to ibuprofen.  Plaintiff was instructed to take them "as needed

15 for pain[.]"  Tr. 220-21.  When the Plaintiff self-reported his medications, he did

16 not list the use of Naproxen, Naprosyn, or any pain medication, which the ALJ

17 logically interpreted to mean Plaintiff did not use these medications.  Tr. 36.  The

18 ALJ did not err in finding that Plaintiff's lack of medication use discounted his

19 symptom testimony.  Moreover, the relatively minimal treatment prescribed (anti-

20 inflammatory medication) is not consistent with disabling conditions.

1    The ALJ further observed that the Plaintiff did not seek regular mental

2    health treatment, despite his reports that he has been depressed his entire life,

3    worsening over time.  Tr. 36 (citing Tr. 240).  Where the evidence suggests lack of

4    mental health treatment is part of a claimant's mental health condition, it may be

5    inappropriate to consider a claimant's lack of mental health treatment as evidence

6    of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.

7    1996).  However, when there is no evidence suggesting a failure to seek treatment

8    is attributable to a mental impairment rather than personal preference, it is

9    reasonable for the ALJ to conclude that the level or frequency of treatment is

10   inconsistent with the level of complaints.  *Molina*, 674 F.3d at 1113-1114.  Here,

11   nothing in Plaintiff's medical record indicates that Plaintiff's lack of mental health

12   treatment is attributable to his alleged mental illness.

13        Plaintiff's medical record indicates that he only saw mental health treatment

14   providers around the time that he was applying for benefits and did not maintain

15   treating relationships with those providers.  As discussed *infra,* Plaintiff sought a

16   mental health evaluation from Dr. Arnold, but only after he was informed that his

17   physical complaints were not sufficient to establish disability.  Tr. 36 (citing Tr.

18   240-44).  Plaintiff also saw Counselor Phil Eager around the time that he applied

19   for benefits.  Tr. 253.  There is no evidence in Plaintiff's medical record regarding

20   his appointment with Counselor Eager, other than a passing reference from

Plaintiff's treating provider as the basis for beginning a course of anti-depressants. Tr. 253.  There is no evidence of any follow-up appointments or continuing treatment with either Dr. Arnold or Mr. Eager.  These isolated appointments suggest that Plaintiff's mental condition did not prevent him from seeking treatment, as he was able to attend appointments when required of him to establish disability.  During Plaintiff's mental health evaluation with Dr. Arnold, Plaintiff posited that he suspected he had several mental health impairments, including clinical depression, ADHD, and Asperger's, however, he "denied a significant history of mental health treatment."  Tr. 240-42.  Plaintiff regularly received other treatment for conditions such as hypogonadism, suggesting that he was able to seek regular treatment if inclined.  *See* Tr. 260-306.

From Plaintiff's medical record, it appears that the only regular mental health treatment he received was a prescription for anti-depressants from his treating provider.  *See* Tr. 248-312.  Despite seeing mental health providers for a few isolated appointments, Plaintiff did not have regular treatment with a mental health provider.  As will be discussed *infra,* this course of treatment for Plaintiff's mental health impairments is insufficient to suggest serious mental health issues. Plaintiff had access to care but did not seek out dedicated mental health treatment, despite his suspicions that he was suffering from several mental health conditions,

which casts doubt on the alleged severity of his mental health symptoms.  *See* Tr. 260-306.

### 3.  Evidence of Exaggeration

Next, the ALJ discredited Plaintiff's testimony due to evidence suggesting that Plaintiff exaggerated symptoms and limitations.  The tendency to exaggerate is a permissible reason to discount Plaintiff's credibility.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's observation that Plaintiff was uncooperative during cognitive testing but was "much better" when giving reasons for being unable to work).

Plaintiff's results on a Pain-Patient-Profile (P3) test suggested that his "subjective pain experience/somatic symptoms were greater than might be expected, given his medical condition."  Tr. 36 (citing Tr. 243).  Upon examination, Dr. Dalley indicated that Plaintiff was "somatically preoccupied" and was not particularly interested in discussing his mental health.  Tr. 36 (citing Tr. 237).  As discussed *supra*, Plaintiff adopted a knee brace after being told of a benign finding of osteochrondroma in his right knee despite normal examinations of Plaintiff's knee.  Tr. 35 (citing Tr. 222).

The ALJ noted that Plaintiff did not report mental health symptoms in his medical record until "after he applied for Washington State Department of Social

and Health Services (DSHS) benefits, and after his treating provider told him there was no objective evidence to support his physical complaints." Tr. 36 (citing Tr. 254). Plaintiff argues first that "it is unclear whether the disability opinion was communicated to [Plaintiff]." ECF No. 15 at 13. Plaintiff's primary care provider noted on February 14, 2013[2] that he "discussed at length" with Plaintiff his opinion that Plaintiff does "not have any objective findings to substantiate a diagnosis consistent with chronic disability." Tr. 254. It is clear from this note that Mr. Moss's opinion was communicated to Plaintiff, so Plaintiff's first argument has no factual merit.

Second, Plaintiff argues he was already being treated for depression when Mr. Moss informed him that there was not sufficient objective findings to support a chronic disability diagnosis.[3] ECF No. 15 at 13. Mr. Moss also noted on February

_____

[2] Plaintiff incorrectly identifies the date as May 3, 2013. ECF No. 15 at 13. However, in reviewing the ALJ's opinion and Plaintiff's medical record, this Court determined that the ALJ most likely was referring to Mr. Moss's clinical note from February 14, 2013.

[3] Plaintiff does not specifically challenge the ALJ's claim that Plaintiff started mental health treatment after he applied for DSHS benefits. *See* ECF No. 15 at 13. The ALJ did not undertake a factual finding as to when Plaintiff applied for DSHS

14, 2013 that Plaintiff "was recently seen by counselor Phil Eagar who noted that Patient scored very high on the depression questionnaire and requested a possible medication for depression." Tr. 253. This undermines the ALJ's finding that Plaintiff only sought treatment for depression after being told that there was not objective evidence to support his disability claim. *See* Tr. 36. The ALJ factually erred in this assertion. However, the ALJ's error here is harmless. As long as there is substantial evidence supporting the ALJ's decision and the error does not affect the ultimate non-disability determination, the error is harmless. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Here, the ALJ provided other valid reasons that Plaintiff's medical record showed evidence

benefits, and such information is not readily available in the record. *See* Tr. 36. Plaintiff alleged that he was depressed on his DSHS psychological evaluation. Tr. 233. However, as discussed at length *supra,* Plaintiff's medical record does not support that he had any mental health treatment before he applied for SSI on September 11, 2012. It appears from the record that the first mental health treatment Plaintiff had was seeing Mr. Eager in early 2013, after applying for disability benefits.

of exaggeration. The ALJ also provided three other specific, clear and convincing

reasons to discount Plaintiff's credibility. Therefore, the factually incorrect

assertion regarding the timing of Plaintiff's mental health treatment is harmless as

the credibility determination is supportable without the factually incorrect

assertion.

### 4. Poor Work Record

The ALJ found that the Plaintiff's poor work record also diminished his

credibility. Tr. 37. Evidence of a poor work history that suggests a claimant is not

motivated to work is a permissible reason to discredit a claimant's testimony that

he is unable to work. *Thomas*, 278 F.3d at 959. The ALJ noted that Plaintiff

"worked only sporadically prior to the alleged disability onset date, which raises a

question as to whether the claimant's continuing unemployment is actually due to

medical impairments." Tr. 37. The ALJ took into account Plaintiff's incarceration

from 1996 to 2000 when considering Plaintiff's employment record. Tr. 37. Since

release from custody, Plaintiff earned at substantial gainful activity level once,

when he was a delivery driver for Pizza Hut for three months in 2007. Tr. 37

(citing Tr. 147, 54).

Plaintiff reports that he was one credit short of a high school diploma.

Tr. 241. He subsequently earned a GED followed by an associate's degree in

audio technology from Spokane Falls Community College in 2010. *Id.* Plaintiff

1  guessed that he has had ten or fewer jobs throughout his life. *Id.* He reported that

2  he has been involuntarily terminated from two positions: once following a back

3  injury, and once for failing to tell his employer that he was a level II registered sex

4  offender. *Id.* Plaintiff reported that his last job ended on October 31, 2010. *Id.*

5  He testified before the ALJ that he left that position because "[t]he pain got too

6  unbearable." Tr. 55. Plaintiff did not provide an explanation for why he left the

7  other positions he testified about before the ALJ. *See* Tr. 53-55. The ALJ opined

8  that Plaintiff's "poor earnings record raises credibility concerns about the

9  claimant's motivation to seek and maintain employment." Tr. 37. A poor work

10  record is a specific, clear and convincing reason to discount Plaintiff's credibility.

11  *Ghanim*, 763 F.3d at 1163.

12  **B. Medical Opinion Evidence**

13      Plaintiff faults the ALJ for discounting the medical opinions of Kevin

14  Weeks, D.O.; Robert Thompson, M.D.; Mahlon Dalley, Ph.D.; and John Arnold,

15  Ph.D. ECF No. 15 at 14-18.

16      There are three types of physicians: "(1) those who treat the claimant

17  (treating physicians); (2) those who examine but do not treat the claimant

18  (examining physicians); and (3) those who neither examine nor treat the claimant

19  but who review the claimant's file (nonexamining or reviewing physicians)."

20  *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted).

"Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester* 81 F.3d at 830-31).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a).

"Other sources" include nurse practitioners, physician assistants, therapists,

teachers, social workers, and other non-medical sources.  20 C.F.R. §§

404.1513(d), 416.913(d).  The ALJ need only provide "germane reasons" for

disregarding an "other source" opinion.  *Molina*, 674 F.3d at 1111.  However, the

ALJ is required to "consider observations by nonmedical sources as to how an

impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d

1226, 1232 (9th Cir. 1987).

### 1.  Dr. Weeks

Dr. Weeks evaluated Plaintiff on November 10, 2012 and opined that

Plaintiff could lift and carry ten pounds frequently and twenty pounds

occasionally; sit for six hours in an eight hour work day; climb, balance, stoop,

crawl, crouch, and kneel frequently.  Tr. 213-17.  The ALJ afforded this portion of

Dr. Weeks' opinion "significant weight."  Tr. 37.  The ALJ afforded "no weight"

to Dr. Weeks' opinion that Plaintiff could stand and work for at least two hours but

fewer than six hours in an eight hour work day.  Tr. 37 (citing Tr. 217).

Dr. Weeks' opinion is contradicted by Mr. Moss's opinion, Tr. 254, so the

ALJ was required to provide specific and legitimate reasons to discount it.  *Bayliss*,

427 F.3d at 1216.

The ALJ discounted Dr. Weeks' opinion because the objective evidence of

record does not support the opined limitation.  Tr. 37.  An ALJ may discredit

treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. The ALJ cited evidence from Mr. Moss, Plaintiff's treating provider, that Plaintiff's medical record did not contain objective evidence to support a finding of disability. Tr. 37 (citing Tr. 254). He cited evidence that Plaintiff's low back exams and x-rays were all within normal limits. Tr. 37 (citing Tr. 216-222). The osteochondroma on Plaintiff's right knee was a "benign incidental finding." Tr. 222. Plaintiff's lab results came back negative for arthritis, osteoarthritis, or any other conditions that could be the precipitating cause of his pain. Tr. 254. At his treating provider's suggestion, Plaintiff sought a second opinion who indicated that Plaintiff has "had a very extensive workup and that no further testing was indicated or necessary." Tr. 258.

Furthermore, the objective evidence in Dr. Weeks' own report does not support the opined limitation. *See* Tr. 213-17. While Dr. Weeks did note that Plaintiff had decreased range of motion in the lumbar spine, he ultimately diagnosed Plaintiff with "minimally decreased range of motion." Tr. 217. Furthermore, Dr. Weeks observed that Plaintiff was "in no acute distress" during the examination. Tr. 215. He noted that Plaintiff had an antalgic gait, but referred to it as "mildly antalgic[.]" Tr. 215. Plaintiff argues that Dr. Weeks' observations regarding Plaintiff's lumbar range of motion and gait are objective evidence supporting the opined limitation which the ALJ ignored. ECF No. 15 at 15.

1   However, Plaintiff misconstrues the legal standard: the question the Court must ask

2   is not is there *any* objective evidence that supports Dr. Weeks' opinion, but

3   instead, is the ALJ's decision supported by substantial evidence. *See Batson*, 359

4   F.3d at 1195.  In this case, the ALJ reasonably concluded that the objective

5   evidence in Dr. Weeks' own report and the objective evidence from the overall

6   medical record both undercut the opined limitation.

7       2. *Dr. Thompson*

8       Dr. Thompson, a reviewing physician, testified at Plaintiff's hearing before

9   the ALJ as an impartial medical expert.  Tr. 48-51.  He opined that Plaintiff could

10  lift and carry twenty pounds occasionally and ten pounds frequently.  Tr. 50.  The

11  ALJ afforded this portion of Dr. Thompson's opinion "significant weight."  Tr. 37.

12  He further opined that Plaintiff could sit for two hours at a time for a total of six

13  hours throughout an eight hour work day and stand for one hour at a time, for a

14  total of four hours during the work day.[4]  Tr. 50.  He further opined that Plaintiff

15  _____

16  [4] The ALJ incorrectly reports these limitations as Plaintiff "could sit for 2 hours at

17  one time and stand/walk for 6 hours in an 8 hour workday."  Tr. 37.  Plaintiff does

18  not challenge the ALJ's error in recitation, but instead also misreports both Dr.

19  Thompson's opined limitations and the ALJ's recitation of those limitations.  *See*

20  ECF No. 15 at 15-16 (Plaintiff asserts the opined limitation was that Plaintiff could

1    was limited to occasionally handling, pushing and pulling with his left hand "due

2    to the claimant's old left scaphoid non-union [fracture]." Tr. 37 (citing Tr. 50).  He

3    limited Plaintiff to occasionally climbing stairs, ramps, ladders, and scaffolds,

4    crouching and stooping with no crawling.  Tr. 50.  The ALJ afforded this portion

5    of Dr. Thompson's opinion "little weight."  Tr. 38.

6        Dr. Thompson's opinion is contradicted by Mr. Moss's opinion, Tr. 254, so

7    the ALJ must provide specific and legitimate reasons to discount it.  *Bayliss*, 427

8    F.3d at 1216.

9        The ALJ rejected Dr. Thompson's opinion because Plaintiff's medical

10   record does not support the opined limitation.  Tr. 37-38.  An ALJ may discredit

11   treating physicians' opinions that are unsupported by the record as a whole or by

12   objective medical findings.  *Batson*, 359 F.3d at 1195.  The ALJ found that x-rays

13   in Plaintiff's medical record show that Plaintiff had a non-union scaphoid fracture

14   that predated Plaintiff's claim for disability.  Tr. 38 (citing Tr. 222 ("Patient was

15   noted to have a non-union fracture in the left wrist but this was already noted and

16

17   "sit/walk two hours at a time and up to six hours in an eight-hour workday.")

18   Because Plaintiff did not challenge the ALJ's error, it is waived on appeal.

19   *Campbell v. Burt,* 141 F.3d 927, 931 (9th Cir. 1998) (holding that issues not raised

20   before the district court are waived on appeal).

was not the presenting problem.")).  Plaintiff did not seek treatment for his wrist condition after his application for benefits.  He complained of wrist pain when he saw Mr. Moss in October 2012, incident to his application for disability.  Tr. 219. He also complained of wrist pain to Mr. Moss when he was seeking a letter for light duty work in January 2013.  Tr. 225.  And, he complained of wrist pain when being evaluated by Dr. Weeks during a consultative examination.[5]  Tr. 213. Plaintiff throughout the medical record sought treatment for other ailments, such as low testosterone, however, he did not seek treatment for his allegedly disabling wrist pain.  *See* Tr. 219-31, 248-312.  As has been discussed *supra,* there are not medical records before Plaintiff's application for disability benefits, thus, there is no evidence he sought treatment for his wrist before applying for benefits.  Many times, when seeing providers, Plaintiff did not complain of wrist pain.  *See, e.g.,* Tr. 258, 261, 262, 264-65, 268, 270, 272.  The ALJ reasonably relied on the opinion of Mr. Moss, Plaintiff's treating provider who took x-rays and examined Plaintiff's wrist but found no disability over that of Dr. Thompson.  *See* Tr. 37-38. Overall, Plaintiff's medical record does not support Dr. Thompson's opined limitations, which is a specific and legitimate reason to discount it.

---

[5] Contrary to Plaintiff's assertion, ECF No. 15 at 16, there is no objective evidence of wrist pain present in this evaluation.  *See* Tr. 213-17.

### 3. *Dr. Dalley*

Dr. Dalley examined Plaintiff on October 25, 2012, Tr. 233-38, and opined that he would "have severe limitations in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance without special supervision." Tr. 38 (citing Tr. 235). He further opined severe limitations in completing a normal work day or week without interruptions from psychologically-based symptoms and in maintaining appropriate behavior in a work setting. Tr. 236. Dr. Dalley also indicated that he believed Plaintiff would have a marked restriction in his ability to perform routine tasks without special supervision; communicate and perform effectively in a work setting; and set realistic goals and plan independently. Tr. 236. Finally, he assessed moderate limitations regarding Plaintiff's ability to understand, remember, and persist in tasks by following detailed instructions; learn new tasks; and adapt to changes in routine work setting. Tr. 235. The ALJ afforded Dr. Dalley's opinion "little weight." Tr. 38.

Dr. Dalley's opinion is controverted by Mr. Moss's opinion, Tr. 254, so to discount it the ALJ must provide specific and legitimate reasons. *Bayliss*, 427 F.3d at 1216.

The ALJ rejected Dr. Dalley's opinion because Plaintiff "had no history of psychiatric treatment or complaints prior to the claimant applying for State welfare

1  benefits through DSHS." Tr. 38.  The Ninth Circuit has said that a claimant's

2  failure to seek treatment for a mental disorder is not a substantial basis on which to

3  conclude a psychological assessment is inaccurate.  *Nguyen*, 100 F.3d at 1465.

4  However, when there is no evidence suggesting a failure to seek treatment is

5  attributable to a mental impairment rather than personal preference, it is reasonable

6  for the ALJ to conclude that the level or frequency of treatment is inconsistent with

7  the level of complaints.  *Molina*, 674 F.3d at 1113-1114.

8          As discussed at length *supra*, there is no evidence that Plaintiff's minimal

9  mental health treatment was attributable to anything other than personal

10 preference.  Plaintiff sought regular treatment for other ailments, such as

11 hypogonadism.  *See* Tr. 260-306.  Regular treatment indicates Plaintiff had access

12 to care, however, Plaintiff did not seek out dedicated mental health treatment.  *See*

13 Tr. 260-306.  The extent of mental health treatment evident from the medical

14 record is anti-depressants prescribed by a general care provider.  *See* Tr. 248-312.

15 Plaintiff rapidly changed between anti-depressant medications because he felt like

16 they were not working.  Tr. 272 ("Patient would also like to get on Lexapro. He

17 reports he does not feel any better with paroxetine. Patient has tried multiple

18 medications for his depression including citalopram, paroxetine, wellbutrin, and

19 effexor and failed all of these medications.").  Notably, other than Plaintiff's

20 complaints that he was depressed, the record does not reflect any adverse effect of

his mental health condition.  For example, he has never been treated at the

emergency room for complications of mental health ailments; never had a

documented episode of decompensation; never failed to attend appointments due to

mental health symptoms.  When viewed in light of the entire medical record,

Plaintiff's failure to consistently seek mental health treatment appears to be a

consequence of the mild effect of his depression, which the ALJ may permissibly

consider when assigning weight to Dr. Thompson's opinion.

To the extent that the ALJ's finding here was in error for contravening Ninth

Circuit precedent, it is harmless error.  The ALJ cited other specific and legitimate

reasons which support the ALJ's rejection of the opinion.  Therefore, the outcome

is the same despite the improper reasoning.  Errors that do not affect the ultimate

result are harmless.  *See Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007); *Curry

v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991); *Booz v. Sec'y of Health & Human

Servs.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

The ALJ also discounted Dr. Dalley's opinion because "Dr. Dalley relied

heavily upon the claimant's self-reported symptoms, which are not credible."

Tr. 38.  A physician's opinion may be rejected if it is based on a claimant's

subjective complaints which were properly discounted.  *Tonapetyan*, 242 F.3d at

1149; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999); *Fair*,

885 F.2d at 604.  Here, Dr. Dalley relied on two pieces of evidence in making his

opined limitations.  First, he relies on self-reported complaints that Plaintiff has "[d]ifficulty remembering simple instructions or even what [he] was going to do. Difficulty understanding written instructions[.]" Tr. 234.  Second, he relied on a "self-administered adult personality assessment."  Tr. 238.  From this assessment, Dr. Dalley diagnosed depression.  Tr. 238.  However, this test is based entirely on Plaintiff's self-reported symptoms.  Tr. 238 ("This standardized assessment provides a wide range of self-descriptions scored to give a quantitative measurement of an individual's level of emotional adjustment").  As discussed *supra,* the ALJ properly discounted Plaintiff's credibility in reporting his own symptoms, calling into question the validly to Dr. Dalley's depression diagnosis based on a self-administered test.  Furthermore, Dr. Dalley's symptom findings are based on typical symptoms for individuals with personality assessment inventory scores similar to Plaintiff's.  Tr. 238 ("Others with similar scores report being depressed and withdrawn. … These individuals have difficulty in concentrating and making decisions; their preoccupations and anxiety are likely to impair their ability to think clearly.").  Dr. Dalley did not undertake a finding that those symptoms apply to Plaintiff.  *See* Tr. 238.

Dr. Dalley also conducted objective tests on Plaintiff, however, the results of those tests are within normal limits.  Tr. 238.  As discussed *supra,* Mr. Greer scored 28 of 30 possible points on the mental status examination.  Tr. 238.  Dr.

1    Dalley concluded that Plaintiff's results "exhibit average mental control and

2    demonstrates and average fund of knowledge." Tr. 238. Further, he noted that

3    Plaintiff "demonstrates an ability to think abstractly." *Id.* Dr. Dalley conducted

4    trail-making tests which "examine attentional abilities and are highly sensitive to

5    effects of brain impairment." Tr. 238. As all of Plaintiff's objective testing was

6    within normal limits, Dr. Dally's opined limitations were inconsistent with the tests

7    he performed. In addition, given the test results were within normal limits, Dr.

8    Dalley must have based his opined limitation on Plaintiff's self-reported

9    symptoms, which the ALJ properly discredited. This was a specific and legitimate

10   reason to discount Dr. Dalley's opinion.

11       *4. Dr. Arnold*

12       Dr. Arnold examined Plaintiff on August 21, 2014. Tr. 240-47. Dr. Arnold

13   opined that Plaintiff would have a marked limitation in four areas: the ability to

14   maintain attention and concentration for extended periods; the ability to work in

15   coordination with or proximity to others without being distracted by them; the

16   ability to complete a normal workday and workweek without interruptions from

17   psychologically based symptoms and to perform at a consistent pace without an

18   unreasonable number and length of rest periods; and the ability to accept

19   instructions and respond appropriately to criticism from supervisors. Tr. 245-47.

20   The ALJ assigned "little weight" to the portion of Dr. Arnold's opinion that opined

1  restrictions on Plaintiff's ability to maintain attention and concentration; work in

2  coordination with others; complete a normal workday or week without

3  interruptions from psychological symptoms; and accept instructions and respond

4  appropriately to supervisors.  Tr. 38.

5       Dr. Arnold's opinion is contradicted by Mr. Moss's opinion, Tr. 254, so the

6  ALJ must provide specific and legitimate reasons to discount it.  *Bayliss*, 427 F.3d

7  at 1216.

8       The ALJ discounted Dr. Arnold's opinion because "this was an examination

9  required by the claimant's attorney just prior to the hearing and it does not address

10 the time period from the alleged on (sic) date of June 1, 2006 through the date of

11 the exam in August 2014, so it is of limited assistance in determining the severity

12 of the claimant's symptoms during the time period at issue."  Tr. 38.  As Plaintiff

13 points out, "the mere fact that a medical report is provided at the request of counsel

14 or, more broadly, the purpose for which an opinion is provided, is not a legitimate

15 basis for evaluating the reliability of the report."  *Reddick v. Chater*, 157 F.3d 715,

16 726 (9th Cir. 1998).  However, the Ninth Circuit goes on to hold that, "[e]vidence

17 of the circumstances under which the report was obtained and its consistency with

18 other records, reports, or findings could, however, form a legitimate basis for

19 evaluating the reliability of the report."  *Id.*  Here, the ALJ did not reject Dr.

20 Arnold's opinion merely because it was requested by Plaintiff's attorney, but

1    because of the other circumstances also surrounding the request.  Dr. Arnold's

2    evaluation occurred more than eight years after Plaintiff's alleged disability onset.

3    The report makes no finding as to the period of time covered.  *See* Tr. 240-47.  The

4    mental status exam only addressed Plaintiff's contemporary mental capabilities.

5    Tr. 240-47.  Moreover, it is relevant that Plaintiff's attorney requested this

6    examination because it was not medically indicated, and it followed a finding by

7    Plaintiff's primary care physician and a secondary source that Plaintiff's record did

8    not contain evidence of physical disability.  Tr. 254.  Under Ninth Circuit

9    precedent, the ALJ's consideration of the circumstances precipitating Dr. Arnold's

10   evaluation are an appropriate reason to discount his opined limitations.

11          The ALJ also discredited Dr. Arnold's opinion because he relied heavily on

12   Plaintiff's self-reported symptoms.  Tr. 38.  A physician's opinion may be rejected

13   if it is based on a claimant's subjective complaints which were properly discounted.

14   *Tonapetyan*, 242 F.3d at 1149; *Morgan*, 169 F.3d 595; *Fair*, 885 F.2d at 604.  The

15   vast majority of Dr. Arnold's report is recitation of Plaintiff's self-reported

16   symptoms and history.  Tr. 240-43.  Before undertaking diagnosis, Dr. Arnold

17   performed a mental status examination.  Most of the evidence from Plaintiff's

18   mental status examination demonstrates non-impairment.  Tr. 242.  Plaintiff was

19   oriented in all spheres, appropriately attired, exhibited logical and progressive

20   thought patterns, and had normal to marginal memory.  Tr. 242-43.  The best

evidence of impairment is based on Plaintiff's self-reported "depressed" mood.
Tr. 242.  The single piece of evidence that Plaintiff relies upon as objective indicia
of impaired mental status is Dr. Arnold's impression that Plaintiff's affect was
"mildly-moderately constricted."  Tr. 242.  Even if this Court accepts that
Plaintiff's affect is objective evidence outside of Plaintiff's subjective symptoms, a
single piece of objective evidence does not defeat the ALJ's conclusion that Dr.
Arnold based his opinion largely on subjective symptom testimony.  Dr. Arnold's
reliance on subjective symptom testimony in forming his opinion is a specific and
legitimate reason to discount it.  *Bayliss*, 427 F.3d at 1216.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by
substantial evidence and free of harmful legal error.

 **IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 15) is **DENIED.**

2.  Defendant's motion for summary judgment (ECF No. 19) is **GRANTED.**

The District Court Executive is directed to file this Order, enter
**JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE
THE FILE.**

DATED this 16th day of March, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE